UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------- x
GENARO RAMOS, on behalf of himself :
and others similarly situated,[1] :
 :
                Plaintiff, :
 :
   -against- :
 :
98th. STREET AUTO SERVICE INC. :   **REPORT AND RECOMMENDATION**
d/b/a SHELL GAS STATION, :
ASTORIA AUTO CENTER INC. d/b/a :   21 Civ. 6429 (MKB) (VMS)
BP GAS STATION, ASTORIA :
AUTO CARE, INC. d/b/a BP :
GAS STATION, NARINDER :
SINGH, HARDEEP SINGH, and :
JASSPRED SINGH,[2] :
 :
                Defendants. :
------------------------------------------------------- x

**Vera M. Scanlon, United States Magistrate Judge:**

On November 18, 2021, Plaintiff Genaro Ramos ("Plaintiff") commenced this action against 98th. Street Auto Service Inc. d/b/a Shell Gas Station ("Auto Service"), Astoria Auto Center Inc. d/b/a BP Gas Station ("Auto Center"), Astoria Auto Care, Inc. d/b/a BP Gas Station ("Auto Care"), Narinder Singh, Hardeep Singh, and Jasspred Singh (collectively, "Defendants"), asserting claims for violations of the Fair Labor Standards Act, 29 U.S.C. §§ 201 et seq.

---

[1] This action purports to be a collective action.  See Compl., ECF No. 1 at 8-11.  The parties settled this case on an individual basis.

[2] Mr. Singh's name is spelled differently in various filings.  See, e.g., Compl., ECF No. 1 at 1 (naming Defendant "Jasspred Singh"); Letter, ECF No. 14 at 2 (referring to Defendant "Jaspreet Singh"); State Court Compl., ECF No. 15 at 9 (naming Defendant "Jaspreet Singh a/k/a Jessy"); Settlement, ECF No. 26-1 at 1 (referencing Defendant "Jaspreet Singh").  In this report and recommendation, the Court uses the spelling of Mr. Singh's name as set forth in the complaint for consistency.

1

("FLSA"), and violations of the New York Labor Law, N.Y. Lab. Law §§ 1 et seq. ("NYLL"). See generally Compl., ECF No. 1.

Prior to instituting this action, on April 24, 2021, Plaintiff instituted a parallel action in the New York State Supreme Court, Queens County, Index No. 709446/2021 (the "State Court Action") against Auto Service, Auto Center, Narinder Singh, Hardeep Singh, and Jasspred Singh (the "Released Defendants"), asserting claims for violations of the NYLL. See generally State Court Compl., ECF No. 15 at 9-33. Hang & Associates, PLLC, Plaintiff's original counsel, instituted the State Court Action on Plaintiff's behalf. See Opp. to Pre-Mot. Conf. Request, ECF No. 13 at 3. Plaintiff was apparently unaware of the institution of the State Court Action. See id. On November 15, 2021, Plaintiff retained current counsel and terminated representation by Hang & Associates, PLLC. See id. Current counsel searched PACER to ensure that prior counsel had not instituted a federal action on Plaintiff's behalf. See id. Current counsel then instituted this action on November 18, 2021. See id. On November 19, 2021, prior counsel informed current counsel of the pending State Court Action.

Plaintiff subsequently informed this Court of the settlement of the State Court Action (the "Settlement"). See Letter, ECF No. 19. Plaintiff then filed a notice of voluntary dismissal of this action pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(i).[3] See Notice of Dismissal, ECF No. 20. The Court scheduled a Cheeks hearing and invited the filing of a letter from Plaintiff citing authority for his position that Cheeks review was unnecessary and impermissible in this case. See 7/20/2022 Order. In response, Plaintiff filed a letter stating that he "decided not

---

[3] Plaintiff filed a separate notice of dismissal pursuant to Rule 41(a)(1)(A)(i) as to Auto Care, see Notice of Dismissal, ECF No. 30, which is not a party to the Settlement, see Settlement, ECF No. 26-1. Plaintiff dismissed his claims as to Auto Care because it was not his employer, but, rather, it was a corporation owned by the prior owner of the gas station where Plaintiff had worked. Conf. Tr. I at 11:1-5. The Court so-ordered the dismissal. See 1/31/2023 Order.

to oppose the Court's review of the parties' state court settlement and will be submitting the papers for approval." Letter, ECF No. 23. The parties then filed a joint motion for settlement approval. See generally Joint Mot. for Settlement Approval, ECF No. 26. In response to the Court's Order, Plaintiff supplemented the joint motion with a letter citing authority for the position that the unrepresented organizational defendants could be parties to the Settlement and participate in the Cheeks process. See generally Letter, ECF No. 27.[4] The Court conducted a two-part Cheeks hearing. See generally Conf. Tr. I; Conf. Tr. II.

## I. LEGAL STANDARD

Rule 41(a)(1)(A) provides:

> Subject to Rules 23(e), 23.1(c), 23.2 and 66 and any applicable federal statute, the plaintiff may dismiss an action without a court order by filing:
> (i) a notice of dismissal before the opposing party serves either an answer or a motion for summary judgment; or
> (ii) a stipulation of dismissal signed by all parties who have appeared.

Fed. R. Civ. P. 41(a)(1)(A).

## II. DISCUSSION

The Court addresses below (1) whether Cheeks review is necessary in this case and, if so, (2) whether the Settlement withstands Cheeks review.

---

[4] Although Auto Service and Auto Center are not represented in this action, the Court permitted their representative to proceed on their behalf for the limited purpose of effectuating the Settlement. See Conf. Tr. I at 6:1-7:10; see also Cui v. O2 Korean BBQ, No. 19 Civ. 2794 (DLI) (SJB), 2020 WL 7034369, at *2 (E.D.N.Y. Feb. 11, 2020) (reasoning that "the absence of an appearance by the corporate entity at any point, including at the Cheeks hearing, [does not] preclude[] approval of the Settlement Agreement," as "[b]eing able to appear in Court and having authority to settle are two separate things" (footnote omitted)); Burgos v. San Miguel Transp., Inc., No. 16 Civ. 5929 (PAE), 2016 WL 7015760, at *1 n.1 (S.D.N.Y. Dec. 1, 2016) (noting that, while, "[g]enerally, a corporation must be represented by counsel and may not proceed pro se[,] . . . for limited purposes, an exception may apply permitting an agent of a corporation to represent a corporation when the agent is a party to the action" and holding the exception applicable "for the limited purpose of settling this action" (citations omitted)).

### A. The Court Need Not Decide Whether <u>Cheeks</u> Review Is Required Because The Parties Consented To It.

Typically, "dismissal under either Rule 41(a)(1)(A) approach requires no court action to be effective." <u>Samake v. Thunder Lube, Inc.</u>, 24 F.4th 804, 809 (2d Cir. 2022) (citation & footnote omitted). In <u>Cheeks v. Freeport Pancake House, Inc.</u>, 796 F.3d 199 (2d Cir. 2015), the Court of Appeals for the Second Circuit held that the FLSA falls within the "applicable federal statute" exception in Rule 41(a)(1)(A); as a result, "Rule 41(a)(1)(A)(ii) stipulated dismissals settling FLSA claims with prejudice require the approval of the district court or the DOL to take effect." <u>Id.</u> at 206. The Second Circuit subsequently expanded the holding of <u>Cheeks</u> to both unilateral and stipulated dismissals pursuant to Rule 41(a)(1)(A), <u>see</u> <u>Samake</u>, 24 F.4th at 810 (holding that "the same result [as in <u>Cheeks</u>] is warranted when the dismissal is effected unilaterally under Rule 41(a)(1)(A)(i) as when dismissal is effected by stipulation of all parties under (A)(ii)"), and to dismissals both with and without prejudice pursuant to Rule 41(a)(1)(A), <u>see id.</u> (reasoning that "the logic of <u>Cheeks</u> as applied to Rule 41(a)(1)(A)(ii) dismissals with prejudice applies equally to Rule 41(a)(1)(A)(i) dismissals without prejudice"). Under <u>Cheeks</u>/<u>Samake</u>, upon the filing of a notice of dismissal pursuant to Rule 41(a)(1)(A) in an action in which an FLSA claim has been asserted, the court must inquire "as to the existence of any FLSA settlement." <u>Id.</u> at 811. If an FLSA settlement does not exist, the court should so-order the notice of dismissal. <u>Id.</u> By contrast, if an FLSA settlement exists, the court should engage in a <u>Cheeks</u>/<u>Samake</u> review. <u>Id.</u>

Because Plaintiff asserted an FLSA claim in this action, <u>see generally</u> Compl., ECF No. 1, Plaintiff's Rule 41(a)(1)(A)(i) notice of dismissal does not have automatic effect and requires further review by this Court. The Court need not address, however, the propriety of a <u>Cheeks</u>/<u>Samake</u> review under these circumstances, given that Plaintiff consented to the

Cheeks/Samake review and, together with the Released Defendants, filed a joint motion for settlement approval subsequent to the filing of the notice of voluntary dismissal as to all Defendants.  See, e.g., Letter, ECF No. 23 (stating that, "[u]pon further consideration, we have decided not to oppose the Court's review of the parties' state court settlement"); Joint Mot. for Settlement Approval, ECF No. 26 at 2 (explaining that, "because plaintiff's execution of the General Release may implicate claims arising under the federal Fair Labor Standards Act, as amended ('FLSA'), the parties' [sic] – in an abundance of caution and in accordance with the Court's Order, hereby submits [sic] the parties' settlement for judicial review and approval pursuant to Cheeks v. Freeport Pancake House, Inc." (citations omitted)); Conf. Tr. II at 7:25-8-1 (noting that "we decided in an abundance of caution to, you know, submit the paperwork to the Court"); Conf. Tr. II at 8:22-25 (reiterating that, "in an abundance of caution, we just decided that it would make sense to get this matter approved by the Court and just have all the claims resolved in one setting").

> **B.    The Court Respectfully Recommends Approval Of The Settlement Pursuant To Cheeks/Samake.**

When conducting a Cheeks/Samake review, courts address (1) whether a settlement is fair and reasonable, in view of the Wolinsky factors; (2) whether the attorneys' fees and costs sought are reasonable; and (3) whether a settlement runs afoul of any of the Cheeks concerns.

> **i.    The Wolinsky Factors Favor Approval Of The Settlement.**

The reviewing court must answer "[t]he ultimate question" of "whether the proposed settlement reflects a fair and reasonable compromise of disputed issues rather than a mere waiver of statutory rights brought about by an employer's overreaching."  Wolinsky v. Scholastic Inc., 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012) (quotations & citations omitted).  In doing so, the

5

reviewing court is guided by the Wolinsky factors, which, here, weigh in favor of approving the Settlement pursuant to Cheeks.

The first factor is "the plaintiff's range of possible recovery." Wolinsky, 900 F. Supp. 2d at 335 (citations omitted). Here, Plaintiff's total possible best case recovery in this action would be $34,000, which encompasses $12,000 in alleged unpaid wages, $12,000 in liquidated damages, and $10,000 in statutory damages, as compared to the $10,000[5] provided for in the Settlement. See Joint Mot. for Settlement Approval, ECF No. 26 at 3. This is a significant recovery, as the Settlement provides Plaintiff with a little over half of his alleged underlying unpaid wages even after attorneys' fees and costs are deducted. See id.

The second factor is "the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses." Wolinsky, 900 F. Supp. 2d at 335 (quotations & citations omitted). The Released Defendants raise "bona fide disputes about the value of plaintiff's claims" that would warrant further litigation with its associated costs and expenses, as the Released Defendants dispute that Plaintiff frequently worked in excess of forty hours per week, contend that Plaintiff's work schedule fluctuated daily and weekly, and state that the Released Defendants held a good-faith belief that they were not required to provide wage notices and wage statements to Plaintiff. Joint Mot. for Settlement Approval, ECF No. 26 at 3.

As to the third factor, which is "the seriousness of the litigation risks faced by the parties," Wolinsky, 900 F. Supp. 2d at 335 (citations omitted), Plaintiff decided to enter into the Settlement following "thorough[]" discussions of the "assessment of litigation risks," and the

---

[5] After the proposed deduction of $838 in costs and $3,053.68 in attorneys' fees, Plaintiff would receive $6,108.32.

6

Settlement enables "the parties to avoid the risks inherent in any trial." Joint Mot. for Settlement Approval, ECF No. 26 at 4-5.  In this case, Plaintiff's counsel received information about the limited resources of the Released Defendants, which raised a significant concern that any large judgment could not be enforced.  See, e.g., Pre-Mot. Conf. Request, ECF No. 14 at 2 (Narinder Singh, Hardeep Singh, and Jasspred Singh stating that "[w]e had retained an attorney to represent us against the State Court claims as the litigation is ongoing" but that "[s]mall business has been dealing with a lot due to Covid already which is why we cannot afford to pay an attorney a retainer fee again for the same case"); Supp. to Pre-Mot. Conf. Request, ECF No. 15 at 3 (Narinder Singh, Hardeep Singh, and Jasspred Singh stating that they "and the corporation are represented by counsel in state court, and ready to engage in a resolution of the matter" and that they "are a small business and . . . cannot keep paying attorneys for the same case").

      The fourth factor is "whether the settlement agreement is the product of arm's-length bargaining between experienced counsel," Wolinsky, 900 F. Supp. 2d at 335 (quotations & citations omitted).  The Settlement is the "result of extensive arm's length negotiations between plaintiff's counsel and defendants' counsel in the State Court Action who are well versed in the prosecution and defense of wage and hour actions." Joint Mot. for Settlement Approval, ECF No. 26 at 3.  Plaintiff's counsel has significant federal experience with FLSA and NYLL litigation such that he is well-positioned to evaluate Plaintiff's likelihood of success and his risk as to collectability of any possible judgment.  The Court held a two-part Cheeks hearing to ensure that Plaintiff was comfortable proceeding.  See generally Conf. Tr. I; Conf. Tr. II.  Plaintiff repeatedly expressed his desire to conclude the litigation due to personal reasons.  See Conf. Tr. II at 4:20-25, 13:2-5, 13:22-24, 14:3-5.

The final factor is the possibility of fraud or collusion, Wolinsky, 900 F. Supp. 2d at 335 (citations omitted); no indications of fraud or collusion are present here.

The recovery here is a good one for Plaintiff, given the contested claims and limited resources of the Released Defendants.

### ii. The Attorneys' Fees And Costs Sought Are Reasonable.

A reviewing court must also assess the reasonableness of attorneys' fees and costs where applicable. See Fisher v. SD Protection Inc., 948 F.3d 593, 600 (2d Cir. 2020) (citations omitted).

Plaintiff's counsel's costs of $838, or the sum of filing fees and fees for service of process, and attorneys' fees of $3,053.68, or one third of the Settlement amount, less costs, are eminently reasonable, particularly given that Plaintiff's counsel expended more than $5,000 in attorneys' fees combined in the State Court Action and this action. See Joint Mot. for Settlement Approval, ECF No. 26 at 4; Conf. Tr. I at 5:18-22.

### iii. The Cheeks Concerns Do Not Warrant Rejection Of The Settlement.

A reviewing court must ensure that FLSA settlement agreements do not run afoul of any of the Cheeks concerns, which include highly restrictive confidentiality provisions, overbroad releases, unsupported attorneys' fee awards, and restrictions on attorneys' future representations. See Cheeks, 796 F.3d at 206 (citations omitted). The Court notes the mismatch between the law governing FLSA settlements, prohibiting, among other things, restrictive confidentiality provisions and broad releases in wage-and-hour litigation, see, e.g., Cheeks, 796 F.3d at 206 (referring approvingly to a district court's rejection of an FLSA settlement because of "a battery of highly restrictive confidentiality provisions . . . in strong tension with the remedial purposes of the FLSA" and "an overbroad release that would waive practically any possible claim against the

8

defendants, including unknown claims and claims that have no relationship whatsoever to wage-and-hour issues" (quotations & citation omitted)), and the state law governing NYLL settlements, permitting settlement without the confines of judicial oversight, see, e.g., Yunda v. SAFI-G, Inc., No. 15 Civ. 8861 (HBP), 2017 WL 1608898, at *2 (S.D.N.Y. Apr. 28, 2017) (considering the permissibility of a proposed bifurcated settlement structure among the FLSA and NYLL claims, noting that "[t]he NYLL settlement agreement contains several provisions that would be impermissible in an FLSA settlement," and recognizing that "[t]he fact that there may be provisions in the NYLL settlement agreement that could not be included in the FLSA settlement is immaterial because the NYLL settlement agreement does not require judicial approval" (citation omitted)).  New York law does not have any regime of settlement review similar to that which has developed under Cheeks and its progeny.

      The Settlement initially resolved the NYLL claims in the State Court Action.  Thus, the broad release in the Settlement only indirectly implicates Plaintiff's FLSA claims because it could preclude Plaintiff from litigating these claims to a favorable result.  The Court therefore reviews the potentially problematic provisions of the Settlement, confined to Plaintiff's FLSA claims only.  The Settlement implicates concerns as to a restrictive confidentiality provision and a possibly overbroad release.  See Settlement, ECF No. 26-1.  As to the former, the Settlement in paragraphs two and three, as written, would prevent Plaintiff from disclosing the terms of the Settlement without the written permission of the Released Defendants or a court order, except to an accountant or other professional who is bound by the confidentiality provision and to tax authorities, and also provides for specific relief in the event of an intentional breach of the confidentiality provision.  See Settlement, ECF No. 26-1 at 1.  At the Cheeks hearing, Plaintiff and the Released Defendants consented to the confidentiality provision of paragraphs two and

9

three of the Settlement being stricken.  See Conf. Tr. II at 10:16-12:19.  The Settlement is also posted on the public docket, see generally Settlement, ECF No. 26-1, thereby rendering the effect of the confidentiality provision minimized.  The confidentiality provision is therefore not an impediment to approval of the Settlement.

As to the latter, the release in the Settlement, which was entered into by Plaintiff and the Released Defendants, encompasses

> all actions [sic] causes of action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, extents, executions, claims and demands whatsoever, in law, admiralty or equity, which against the RELEASEE, the RELEASOR, RELEASOR's heirs, executors, administrators, successors and assigns ever had, now have or hereafter can, shall or may, have for, upon, or by reason of any matter, cause or thing whatsoever from the beginning of the world to the day of the date of this RELEASE.  With greater particularity to all claims, debts and causes of action relating to any claim for damages set forth in a Complaint under Index No.: 709446/2021 filed in the Supreme Court of New York, Queens County, and for any claim arising out of Plaintiff's employment for or on behalf of Defendants.

Settlement, ECF No. 26-1 at 1.  The pendency of two actions concerning the same parties and subject matter, one in state court and the other here in federal court, is unusual.  It raises an anomalous issue before the Court, given the two parallel actions seeking relief as to similar damages.  Nonetheless, in view of the fairness and reasonableness of the Settlement, as well as the attorneys' fees and costs, discussed above, the Court finds the release of the FLSA claims, as a subset of the claims released in the Settlement, appropriate.

The claims in both actions are largely overlapping.  In this action, Plaintiff's FLSA claim arises from the alleged failure to pay overtime compensation, to create and maintain adequate records, and to apprise Plaintiff of his FLSA rights.  See Compl., ECF No. 1 at 12-13.  Also in this action, Plaintiff's NYLL claim arises from the alleged failure to pay overtime compensation, to provide Plaintiff with wage statements, to create and maintain adequate records, to apprise

10

Plaintiff of his NYLL rights, and to take unlawful kickbacks and deductions.  See Compl., ECF No. 1 at 14-15.  In the State Court Action, Plaintiff's NYLL and NYCRR claims arise from the alleged failure to pay Plaintiff minimum wage, compensation for all hours worked, overtime compensation and for tools of the trade, and to provide a wage notice and wage statements.  See State Court Compl., ECF No. 15 at 9-10, 23-32.  In spite of the breadth of the release, in actuality, the only claims that Plaintiff appears to possess are those asserted in this action and the State Court Action, and they are largely the same.  As to the parties, Plaintiff and the Released Defendants in both actions were identical, with the addition of only Auto Care, now dismissed and named in error, as a Defendant in this action (Auto Care is not released in the Settlement).  See generally Compl., ECF No. 1; State Court Compl., ECF No. 15 at 9-33.  Plaintiff's employment with the Released Defendants was terminated more than two years ago, obviating the risks of new claims arising or the exercise of untoward pressure from a current employer to extract a broad release.  The release, permissible under New York law, is not overbroad in the context of Plaintiff's limited rights against the Released Defendants.

### III. CONCLUSION

For the foregoing reasons, this Court respectfully recommends that the Settlement, with paragraphs two and three stricken, be approved as fair and reasonable pursuant to Cheeks.

### IV. OBJECTIONS

This report and recommendation will be posted on the docket.  Any written objections to this report and recommendation must be filed with the Clerk of the Court within seven days of service of this report.  See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).[6]  Any requests for an

---

[6] Plaintiff's counsel requested a shortened objection period at the Cheeks hearing, and the Court set the objection period as seven days.  See Conf. Tr. II at 16:16-17:8.

extension of time for filing objections must be directed to the District Judge assigned to this action prior to the expiration of the seven-day period for filing objections.  Failure to file objections within seven days will preclude further review of this report and recommendation either by the District Court or the Court of Appeals.  See Miller v. Brightstar Asia, Ltd., 43 F.4th 112, 120 (2d Cir. 2022) (reasoning that, "although Rule 72 applies only to the district court's review of a report and recommendation, this court has adopted the rule that when a party fails to object timely to a magistrate's recommended decision, it waives any right to further review of that decision") (quotations & citation omitted).  The Court will mail a copy of this report and recommendation to the Released Defendants at their addresses in the record.

Dated: Brooklyn, New York
       March 2, 2023

*Vera M. Scanlon*
VERA M. SCANLON
United States Magistrate Judge